**Croyle v. Smith**

C.P. of Centre County, no. 2003-2690.

*Mark A. Givler,* for plaintiffs.

*Douglas Marcello,* for defendants.

KISTLER, *J.,* December 2, 2005—Presently before this court is Crete Carrier Corporation and Shaffer Trucking Inc.'s (defendants) motion in opposition to Billie J. Croyle's (plaintiff) objections to subpoenas, as well as defendants' motions in limine. These actions arise out of a 2002 automobile accident involving plaintiff's motorcycle and defendant Ray F. Smith's tractor-trailer. This court will address each issue separately.

## DEFENDANTS' REQUEST FOR SUBPOENAS

Defendants argue they should be permitted to serve subpoenas on PMA Insurance Group and PNC Bank NA. Specifically, defendants are seeking to obtain information contained in plaintiff's workers' compensation records and bank records. First, defendants believe the contents of the workers' compensation records will show the nature and extent of pre-existing injuries, plaintiff's ability for future employment, and how plaintiff's current condition may impact his other activities. In short, defendants believe the workers' compensation records will prove or disprove plaintiff's allegations of serious bodily injury and financial loss due to the accident.

Second, defendants believe these records will address plaintiff's financial injury claims. Defendants maintain that plaintiff's bank records will show plaintiff's physical activity after the accident. For example, these records may show loans for the purchases of sporting equipment, a new motorcycle, hunting equipment and license, or other activities contrary to plaintiff's clams of disability. In addition, defendants argue the bank records will refute plaintiff's claims of suffering financial hardship since

the 2002 accident. Defendants believe obtaining these bank records will reveal plaintiff's financial situation prior to the accident in comparison to his financial situation after the accident. As a result, defendants maintain they will be able to determine if plaintiff has suffered actual financial hardship as a result of the accident.

Defendants contend these subpoenas will reveal relevant and discoverable information pursuant to Pennsylvania Rule of Civil Procedure 4003.1(b). Section 4003.1(b) states "[i]t is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Defendants also cite Pennsylvania Rule of Evidence 401, noting that relevant evidence is evidence having the tendency to make the existence of a fact more probable or less probable than it would be without the evidence. As such, defendants believe the information they seek goes to the heart of plaintiffs' allegations of injury and financial loss.

Plaintiff, on the other hand, believes both his workers' compensation records and bank records are irrelevant to the current action.

This court finds defendants believe only the workers' compensation records may reveal relevant discoverable information. The workers' compensation records could reveal any prior injury sustained by plaintiff. This court does not find any prejudice or undue harm in permitting defendants to view these records, as there is the possibility these records could reveal any pre-existing injuries for which plaintiff is already being compensated. Also, these records could show that injuries currently claimed

by plaintiff were present prior to the accident. As such, defendants should be permitted to review these records.

This court is not persuaded by defendants' argument as to plaintiff's bank records. These records have minimal, if any, relevance to the case at hand. Requiring plaintiff to produce his bank records would be an undue invasion of his privacy, in addition to an excessive intrusion into plaintiff's personal life. As such, this court believes defendants should be barred from reviewing these records.

## DEFENDANTS' MOTIONS IN LIMINE

With respect to defendants' proposed motions in limine, defendants first argue the admission of defendant Smith's fatigue should be inadmissible. Defendants note this court previously ruled that "Plaintiff's allegation that Smith was fatigued is not supported by any evidence." (Opinion and order of August 10, 2005, p. 4.) Since this court already ruled on this issue, defendants believe any evidence of defendant Smith's fatigue should be excluded.

Second, defendants argue that evidence of corporate liability should be excluded because it is irrelevant and prejudicial. Defendants believe plaintiff has failed to address the exclusion of evidence of a corporate claim based upon Pennsylvania Rules of Evidence 401, 402 and 403. Defendants argue that the issue is whether defendant Smith is liable for the accident, not whether the corporate entity is liable for negligently hiring or retaining defendant Smith. Defendants contend corporate liability automatically arises from vicarious liability, and should not be presented as a separate issue.

Third, defendants argue that the admission of the Hazard Perception Test would be erroneous. Defendants note that in its August 10, 2005 opinion, this court ruled the test was unreliable without an expert's opinion as to the causal relationship between the test's results and the accident. Plaintiff had argued the test results showed defendant Smith had a propensity to drive fast rather than safely. Defendants maintain that plaintiff has failed to prove the accident was a foreseeable consequence of defendant Smith's poor score on the test, or that the test was ever used by defendants as a gauge in determining employee driving habits or talents.

Finally, defendants argue that evidence of their compensation system based on miles driven is irrelevant and prejudicial. Defendants argue there is no evidence suggesting this system encouraged defendant Smith to drive fast rather than safely. Likewise, defendants argue there is no causal relationship between the system and the accident. As such, defendants believe the compensation system should be inadmissible.

Plaintiffs, on the other hand, believe the results of the test and defendant Smith's alleged fatigue should be permissible evidence because they show corporate liability. First, plaintiffs argue the test results and defendant Smith's alleged fatigue demonstrates corporate liability because defendants should have been aware of defendant Smith's poor score on the test and his fatigue, yet continued to employ him. Plaintiffs suggest these actions demonstrate negligent policies regarding training, supervision and employee retention. Plaintiffs believe defendants' negligent policies show they condone unsafe behavior.

Plaintiffs contend that "an employer may be found liable for his own direct acts of negligence, as where he

hires an employee who he knows to have dangerous propensities, or where the employer is negligent in supervising the conduct of the employee." Pennsylvania Trial Guide (2nd revised edition), §19.10, pp. 12-13. Plaintiffs also cite the Restatement (Second) of Agency §213, which states:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . .

"(b) In the employment of improper persons or instrumentalities in work involving risk of harm to others; or

"(c) The supervision of the activity; or

"(d) In permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Next, plaintiffs maintain they are not required to produce an expert to show the correlation between defendant Smith's poor score on the test and the 2002 accident. Plaintiffs contend the jury needs no special testimony to understand the test and its correlation with defendant Smith's actions.

Having reviewed the facts and the relevant legal standards, this court determines defendants' motions in limine suggest valid concerns regarding prejudicial effects and relevancy of the disputed evidence. With respect to the issue of defendants' corporate liability, this court believes there is insufficient evidence to show defendants were negligent in their hiring or retention of defendant Smith. The only evidence plaintiff has produced to suggest defendants knew defendant Smith was an alleged dangerous driver was his results on the test. The manufacturer

of the test states that the test was never intended to be a tool in determining the safety habits of a driver; rather, the test was intended to be a training device. There is no evidence of defendant Smith being at fault for prior accidents, nor is there evidence of complaints about defendant Smith for dangerous or reckless driving. Without more evidence of defendant Smith's propensity to rush rather than drive safely, plaintiff cannot prove defendants knew or should have known defendant Smith was a risk to other motorists. As such, defendants should not be held corporately liable for retaining or hiring an employee whom they did not know was a poor driver.

With respect to defendant Smith's alleged fatigue at the time of the accident, this court believes such evidence is suggestive and prejudicial to the defense. Plaintiff attempts to make a causal connection between the number of nights defendant Smith spent at home prior to the accident and the number of nights he stayed away from home prior to the accident. However, plaintiff has not produced any evidence showing defendant Smith was indeed too fatigued to operate his tractor-trailer at the time of the accident. This court does not believe a jury should be expected to infer that spending nights away from home makes a driver more fatigued than a driver who spends a majority of nights sleeping at home.

With respect to the issue of whether defendant Smith drove unsafely due to the per miles driven compensation plan, this court believes this evidence is also irrelevant and prejudicial to the defense. Plaintiff has not presented any convincing evidence to show a causal connection between the accident and the compensation plan. Plaintiff has also failed to show other instances where defendants' other employees drove fast in order to collect on

the compensation plan. There also is no evidence that this mode of compensation is out of the ordinary, or other than the industry standard. As such, any attempt to show a connection between the accident and the compensation plan would be mere speculation.

With respect to the issue of admitting the test, this court believes its reasoning in its August 10 opinion sufficiently detailed why it should not be admissible. If plaintiffs determine that the test and its results are necessary to their case, they need to produce an expert who can show a correlation between the test's results and the accident. Barring any expert testimony, this court believes the test's results speculate as to what knowledge defendants had about defendant Smith's driving habits. Aside from the test's results, plaintiff has yet to show any supplemental evidence of prior incidences where defendant Smith chose the fastest alternative over the safest alternative. Moreover, defendants have never alleged the test was intended as a tool to demonstrate which drivers were safe. As such, without the findings of an expert, the test's results are prejudicial and irrelevant.[1]

## ORDER

And now, December 2, 2005, it is hereby ordered that plaintiff produce to defendants his workers' compensation records within 15 days from the date of this order.

It is further ordered that all defendants' motions in limine are hereby granted.

---

1. This court has viewed the videotape test, and finds that several questions involve scenarios such as backing to unload, opening cargo doors, and dealing with approaching tornados. In short, unrelated to "fast vs. safe" options.